UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOHN H. WINSTON III,**

   *Plaintiff*,

v.                                                                    Case No.  SA-20-CV-00515-JKP

**STATE FARM LLOYDS,**

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Dr. John H. Winston, III's Motion for Attorneys' Fees, Defendant State Farm's Response, Dr. Winston's Reply, and State Farm's Sur-Reply. *ECF Nos. 107, 109, 110, 111*. The parties also briefed the Court on Dr. Winston's breach of contract and Texas Prompt Payment of Claims Act awards. Dr. Winston's Motion is **GRANTED IN PART**. The Court awards Dr. Winston $91,138.71 for his breach of contract claim, $43,379.50 under the Texas Prompt Payment of Claims Act, $14,126.50 in pre-judgment interest, such sums as may be appropriate in post-judgment interest, and $112,338.60 in attorneys' fees.

## FACTUAL BACKGROUND

This case arises from a dispute between Dr. Winston and his homeowner's insurance carrier, State Farm. In April 2019, Dr. Winston filed a claim with State Farm for hailstorm damage to his home. State Farm paid Dr. Winston based on its inspector's assessment of the damage. Dr. Winston was dissatisfied with the payment because the parties disagree about the

extent of the damage—specifically, Dr. Winston contends that his roof needs to be replaced, while State Farm believes it could be repaired. When the parties reached an impasse, Dr. Winston invoked an appraisal clause in the parties' contract to determine the actual amount of loss. The appraisal was conducted in October 2019, finding that $91,138.71 was necessary to replace the roof. State Farm continued to maintain that the roof did not need to be replaced. As such, State Farm reduced the appraisal award by $91,138.71 and paid Dr. Winston the amount it estimated was necessary to repair the roof, plus some additional funds for other damages to the home. All told, State Farm paid Dr. Winston $28,193.74 for hail damage. At issue in the case was whether State Farm breached the parties' contract by refusing to pay $91,138.71 to replace Dr. Winston's roof. The case went to trial and a jury found that State Farm had breached the contract. The jury awarded Dr. Winston $77,896.71, which is the $91,138.71 appraised amount to replace the roof minus Dr. Winston's $13,242.00 deductible.

The question now before the Court is whether the jury awarded the appropriate amount for Dr. Winston's breach of contract claim. Both parties contend that it did not, for different reasons. The Court also considers the parties' briefings on the amount State Farm owes Dr. Winston under the Texas Prompt Payment of Claims Act and for attorneys' fees.

## DISCUSSION

### I. Breach of Contract

The parties disagree about whether the jury awarded Dr. Winston the correct amount for his breach of contract claim. Dr. Winston maintains the jury should not have applied the deductible because State Farm stipulated before trial that $91,138.71 was the amount recoverable for the breach of contract claim. State Farm maintains it stipulated only that $91,138.71 was the

"maximum" amount recoverable, subject to appropriate offsets. As such, State Farm argues the jury properly applied the deductible and the Court should further reduce the jury award for depreciation and prior payments.

Prior to trial, the parties agreed, as the Final Pretrial Order reflects, that $91,138.71 was the "maximum recovery available" for Dr. Winston's breach of contract claim. *ECF No. 87, p. 3*. State Farm, however, reserved the right to seek offsets to Dr. Winston's recovery for applicable policy deductibles, prior payments, and policy limitations. *ECF No. 22, p. 4; ECF No. 87, p. 5*. The right of offset is an affirmative defense. *Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931, 936 (Tex.1980). The party asserting offset has the burden of pleading this affirmative defense and proving the facts necessary to support it. *Id.* Therefore, State Farm, as the party asserting offset, had the burden of pleading and providing adequate evidence at trial to support its affirmative defense. State Farm sufficiently pled offset in its Amended Answer and reserved it in the Final Pretrial Order. *ECF No. 22, p. 4; ECF No. 87, p. 5*. State Farm then had the burden to proffer adequate evidence at trial to support its affirmative defense. To the extent any offsets are omitted from the jury award, the jury's verdict is an implicit rejection of State Farm's affirmative defense. The Court therefore declines to apply State Farm's requested offsets for depreciation and prior payments post-verdict.

The jury's application of the $13,242.00 policy deductible, however, was improper. The Court's review of the record reveals that State Farm already applied the deductible in prior payments it made to Dr. Winston. Specifically, a summary of the payment State Farm issued after its initial April 2019 inspection indicates the $13,242.00 deductible was subtracted from the total award issued. *ECF No. 37-4, p. 2*. In addition, an October 17, 2019 letter State Farm sent Dr. Winston summarizing its post-appraisal payment reflects the $13,242.00 deductible was

again applied. *ECF No. 37-11, p. 2*. For these reasons, the Court finds the jury improperly applied the policy deductible to its award. Dr. Winston has already paid the deductible. The Court therefore adjusts Dr. Winston's award on his breach of contract claim to $91,138.71.

## II. Texas Prompt Payment of Claims Act

Chapter 542 of the Texas Insurance Code requires an insurer to follow certain procedures and meet certain deadlines when it receives, accepts, rejects, or pays an insurance claim. The statute's purpose is to require insurers to promptly pay claims made by their insureds. *See* Tex. Ins. Code §542.054. Courts are required to construe the statute liberally to promote this purpose. *Id*. The elements of a cause of action for a violation of chapter 542 are the following: (1) the plaintiff had a claim under an insurance policy; (2) the plaintiff gave proper notice of its claim to the insurer; (3) the insurer is liable for the claim; and (4) the insurer violated chapter 542 by not timely: (a) acknowledging, investigating, or requesting information about the claim, (b) accepting rejecting, or extending the deadline for deciding the claim, or (c) paying the claim. Tex. Ins. Code §§ 542.051, 542.055, 542.056, 542.057, 542.060. The parties do not dispute that Dr. Winston had a claim under the insurance policy and gave proper notice of his claim to State Farm, satisfying elements (1) and (2). The jury's finding that State Farm breached the parties' contract by failing to pay to replace Dr. Winston's roof satisfies elements (3) and (4)(c), because the jury found State Farm is liable for a claim it did not pay. Therefore, State Farm is liable for violating chapter 542.

In an action for violation of chapter 542, the insurer is liable to pay simple interest on the amount of the claim as damages. Tex. Ins. Code § 542.060(c). Simple interest is calculated by applying the formula *P x R x T = I*, in which *P* is the principal (or the amount of the claim), *R* is the rate of interest, *T* is the time period, and *I* is the interest awarded. *Texas Farmers Ins. v.*

*Cameron*, 24 S.W.3d 386, 400 n.5 (Tex.App.—Dallas 2000, pet. denied). Each of these values is calculated as follows:

- The *P* value, or principal value, is the value of Dr. Winston's breach of contract claim, or $91,138.71.

- The *R* value, or the rate of interest, is calculated by adding five percent to the judgment interest rate set by the Texas Consumer Credit Commissioner, which is currently five percent, for a total of ten percent. Tex. Ins. Code § 542.060(c); Tex. Fin. Code § 304.003; Texas Credit Letter (July 18, 2022).

- The *T* value, or time period, starts accruing on the date the claim was required to be paid, which is 60 days after the insurer has all the information it needs to process the claim. Tex. Ins. Code §§ 542.058, 542.060(c), 542A.001(2). Dr. Winston argues, and the Court agrees, that State Farm had all the information it needed to process his claim on the date of its first claims decision, April 25, 2019. Therefore, interest began to accrue 60 days after April 25, 2019—on June 24, 2019. Statutory damages stop accruing on the date of the trial court's judgment. *State Farm Life Ins. v. Martinez*, 174 S.W.3d 772, 790 (Tex.App.—Waco 2005). This Order is accompanied by a Final Judgment Order dated August 11, 2022, so that is the date upon which damages stop accruing. The number of days between June 24, 2019 and August 11, 2022 is 1,144 days—or approximately 3.1 years.

Applying the formula $P \times R \times T = I$, $91,138.71 x 0.10 x 3.1 = $28,253.00. Therefore, Dr. Winston is entitled to $28,253.00 under § 542.060(c) of the Texas Insurance Code.

### III.     Pre-Judgment and Post-Judgment Interest

Dr. Winston also seeks pre-judgment and post-judgment interest. Pre-judgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *International Turbine Services, Inc. v. VASP Brazilian Airlines,* 278 F.3d 494, 499 (5th Cir.2002) (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 528 (Tex.1998)). The Texas Supreme Court has recognized two separate bases for the award of pre-judgment interest: (1) an enabling statute; and (2) general principles of equity. *Id.* (citing *Johnson & Higgins,* 962 S.W.2d at 530). In Texas, statutory pre-judgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases. *Id.* (citing Tex. Fin. Code §§ 304.102, 304.201). *See also Johnson & Higgins,* 962 S.W.2d at 530. Because Dr. Winston's breach of contract claim does not fall within the statutory provisions, the pre-judgment interest award is governed by Texas common law. *Id.* (citing *Johnson & Higgins,* 962 S.W.2d at 520, and *Adams v. H & H Meat Products, Inc.,* 41 S.W.3d 762, 780 (Tex.App.—Corpus Christi, 2001, no pet.). Texas common law allows pre-judgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract. *Id.* (citing *Johnson & Higgins,* 962 S.W.2d at 532). The current rate of post-judgment interest is five percent per annum, simple interest. *Id.* (citing Tex. Fin.Code § 304.003).

The Court applies the same simple interest formula—$P \times R \times T = I$—to calculate pre-judgment interest. In this case, $91,138.71 \times 0.05 \times 3.1 = \$14,126.50$. Therefore, the Court finds Dr. Winston is entitled to $14,126.50 in pre-judgment interest on his breach of contract claim under Texas common law. The Court also awards Dr. Winston such sums as may be appropriate in post-judgment interest under 28 U.S.C. § 1961(a).

### IV. Attorneys' Fees

In diversity actions, state law controls the award of attorneys' fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Generally, under Texas law, attorneys' fees and litigation expenses may not be recovered absent statutory or contractual authorization. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs. Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006)). The Texas Prompt Payment of Claims Act entitles a successful plaintiff to attorneys' fees. Tex. Ins. Code § 542.060(c). In addition, under Texas law, plaintiffs may recover reasonable attorneys' fees for prevailing on their breach of contract claim. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Federal courts sitting in diversity typically apply the two-step lodestar method in calculating reasonable attorneys' fees under Texas law. *See, e.g., Rappaport v. State Farm Lloyds*, No. 00–10745, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Using this approach, the Court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citing *Hensley*, 461 U.S. at 433). Once the lodestar figure is initially determined, the Court may adjust the figure upward or downward as necessary in light of enunciated factors. *La. Power*, 50 F.3d at 324. These factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature

and length of the professional relationship with the client; (7) the expertise, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997). Evidence of each of the *Arthur Andersen* factors is not required to support an award of attorneys' fees. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex.App.—Dallas 2008).

The burden is on the party seeking attorneys' fees to demonstrate the amount sought, including any adjustment or enhancement. *Jackson v. Host Int'l, Inc.*, 426 Fed.Appx. 215, 226 (5th Cir. 2011). An award of attorneys' fees is entrusted to the "sound discretion" of the Court. *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc*., 907 F.2d 1571, 1575 (5th Cir. 1990). In this case, Dr. Winston seeks $165,005.00 in attorneys' fees for more than 400 hours of work conducted over the course of litigation, from October 2020 to June 2022. State Farm suggests this amount should be reduced because Dr. Winston (1) failed to segregate recoverable fees from unrecoverable fees; (2) billed for paralegal work that was clerical in nature and therefore unrecoverable; (3) did not provide evidence that the hourly rate for paralegal work was reasonable; and (4) did not provide sufficient evidence to support the hourly rate for attorney work. Each of these issues is discussed and decided by the Court below.

### A. Hours Reasonably Expended

The first step in calculating the lodestar amount is to determine how many hours were reasonably expended on the litigation. Dr. Winston provides a spreadsheet which includes billable hours for paralegal, associate attorney, and partner time. *ECF No. 107-1*. As an initial matter, State Farm suggests many of these hours are not recoverable because they relate to Dr. Winston's extra-contractual claims, which were dismissed on summary judgment. Texas law

requires that if any attorneys' fees "relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). Further, "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*. at 313–14. In this case, State Farm argues Dr. Winston failed to segregate fees incurred for his unrecoverable extra-contractual claims from his recoverable contractual and statutory claims. Dr. Winston avers that his recoverable and unrecoverable claims are so intertwined that they need not be segregated. Specifically, Dr. Winston argues that hours questioned by State Farm related to his motion for partial summary judgment advanced both recoverable and unrecoverable claims and segregation was therefore not required. He further argues that time entries questioned by State Farm for an inspection of Dr. Winston's property and a joint status report were expressly related to his recoverable claims. The Court agrees, and declines to adjust Dr. Winston's hours for those tasks. Dr. Winston concedes that work spent responding to State Farm's motion for summary judgment, which ultimately led to the Court dismissing his extra-contractual claims, are unrecoverable. The Court agrees, and reduces Dr. Winston's recoverable associate attorney hours by 13.3 hours to account for this distinction. Dr. Winston is entitled to 385 associate hours.

State Farm further suggests that Dr. Winston improperly included hours for unrecoverable paralegal work. Attorneys' fees have historically included fees for paralegal services. *Richlin Sec. Serv. Co. v. Chertoff,* 553 U.S. 571, 582, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008). However, "[p]aralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir.2001); *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir.1982). Dr. Winston concedes that 12 hours of paralegal

9

time he billed is related to unrecoverable, clerical tasks such as preparing trial binders and performing technology services. The rest of the paralegal time is related to substantive work such as communicating with experts, drafting a notice letter, conferring with the client, preparing court filings, reviewing discovery requests and responses, and preparing trial subpoenas. Accordingly, the Court reduces Dr. Winston's award for paralegal fees by 12 hours. Dr. Winston is entitled to 21.6 paralegal hours.

### B. Reasonable Hourly Rate

Dr. Winston requests fees at an hourly rate of $250 for paralegal work, $400 for associate attorney work, and $800 for partner work. State Farm argues these rates are unreasonable, specifically noting that Dr. Winston failed to provide support for the reasonableness of its hourly paralegal rate, and that its hourly rate for associate attorneys and partners is far greater than the average hourly rate charged by San Antonio attorneys.

Paralegal fees are recoverable on the theory that legal assistants can provide necessary services at a lower rate than would be charged by an attorney. *See Cook v. Brown*, 68 F.3d 447, 453 (Fed. Cir. 1995). The Texas State Bar's 2014 Paralegal Division Compensation Survey sets the median hourly rate for a paralegal in San Antonio at $121. *See Rodriguez v. Mech. Tech. Services, Inc.*, 2015 WL 8362931, at *6; *Sifuentes v. KC Renovations, Inc.*, No. 5-19-CV-00277-RBF, 2022 WL 1050381, at *4–5 (W.D. Tex. Apr. 6, 2022). The Court accordingly reduces the hourly rate for paralegal work in this case to $121. The State Bar of Texas 2019 Income and Hourly Rates Report indicates that the average hourly rate charged by San Antonio lawyers in 2019 was $285. Dr. Winston's briefing does not support the conclusion that this case required specialized legal expertise beyond that of the average attorney. Therefore, the Court adjusts the

hourly rate for associate attorney work in this case to $285. Dr. Winston withdrew his request for 2 hours of partner work, so the reasonableness of the partner's hourly rate is moot.

All told, after the Court's adjustments, Dr. Winston is entitled to recover 21.6 hours of paralegal work at a rate of $121 per hour, or $2,613.60, and 385 hours of associate attorney work at a rate of $285 per hour, or $109,725 for a total of $112,338.60 in attorneys' fees.

### C. Application of the *Arthur Andersen* Factors

After finding the base lodestar amount, the Court determines if there are exceptional circumstances that warrant adjustment to the base lodestar. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.,* No. CIV.A. H-11-3061, 2015 WL 5021954, at *7 (S.D. Tex. Aug. 24, 2015). In this case, the hours expended by Dr. Winston's attorneys seem reasonable. Dr. Winston retained counsel on a contingency-fee basis in October 2019. Over the next two and a half years, counsel expended hundreds of hours preparing for trial and ultimately trying the case. Dr. Winston's counsel retained testifying experts and consulted with experts regarding tile availability. Counsel also engaged in extensive discovery, including numerous inspections, depositions, and resolution of discovery disputes. Counsel also proffered and responded to dispositive motions. The Court finds Dr. Winston provides ample evidence to support his request for attorneys' fees. Furthermore, the fact that counsel's recovery was contingent on prevailing at trial, and the jury awarded Dr. Winston $77,896.71, strongly supports Dr. Winston's request for attorneys' fees. The Court therefore declines to adjust the base lodestar amount, which is $112,338.60.

**CONCLUSION**

For the reasons discussed, Dr. Winston's Motion is **GRANTED IN PART**. The Court awards Dr. Winston $91,138.71 for his breach of contract claim, $43,379.50 under the Texas Prompt Payment of Claims Act, $14,126.50 in pre-judgment interest, such sums as may be appropriate in post-judgment interest, and $112,338.60 in attorneys' fees.

It is so ORDERED.
SIGNED this 11th day of August, 2022.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE